THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NISOURCE INC., and, BAY STATE GAS COMPANY, d/b/a COLUMBIA GAS OF MASSACHUSETTS, <br><br> *Plaintiffs*, <br><br> v. <br><br> FACTORY MUTUAL INSURANCE COMPANY, d/b/a FM GLOBAL, <br><br> *Defendant*. | Civil Action No. _____ |

## COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

Plaintiffs NiSource Inc. ("NiSource"), and its subsidiary Bay State Gas Company, doing business as Columbia Gas of Massachusetts ("CMA") (collectively "plaintiff") by and through undersigned counsel, file this complaint for breach of contract and declaratory judgment against Factory Mutual Insurance Company, doing business as FM Global ("FM Global" or "defendant"), alleging as follows:

### Nature of the Action

1. This dispute arises out of FM Global's failure or refusal to pay or reimburse $256,330,464 in covered loss or to acknowledge and perform its insurance coverage obligations with respect to the damages paid to date by plaintiff to repair damage to 67.8 miles of low-pressure gas distribution pipeline owned and operated by plaintiff in the northeast region of the Merrimack Valley in the Commonwealth of Massachusetts (the "Low-Pressure Pipeline System"), which is one of various pipeline systems owned and operated by plaintiff's

{8600529: }

subsidiaries, principally in Ohio and Indiana, and insured by defendant under a single policy of insurance, policy number 1040100 (the "Policy").

2. On July 10, 2019, plaintiff timely presented FM Global with an interim sworn statement in proof of loss for $256,330,464, net of a $1,000,000 deductible, for damages because of property damage paid by plaintiff to repair the Low-Pressure Pipeline System insured by FM Global (the "Proof of Loss").

3. FM Global has refused to pay this loss despite clear evidence that the Low-Pressure Pipeline System suffered physical loss as a result of the flow of high-pressure gas that far exceeded levels that the Low-Pressure Pipeline System could withstand without being damaged.

4. Plaintiff seeks breach of contract damages of $256,330,464 plus interest, costs and fees as damages for the cost to repair the Low-Pressure Pipeline System. Plaintiff also seeks a declaration that FM Global must pay future, supplemental or consequential damages related to the over-pressurization event, including repair costs that have not yet been fully incurred such as all paving costs for example.

### The Parties

5. NiSource is a corporation organized under the laws of Delaware with a principal place of business in Indiana. NiSource is the named insured under the Policy, together with its operating company subsidiaries, including (without limitation) plaintiff Columbia Gas of Massachusetts and its affiliate NiSource Ohio subsidiary, which are also insureds. The Policy has a single limit of liability applicable to pipelines owned and operated by NiSource's subsidiaries. This lawsuit centers on the meaning of the valuable pipelines coverage that NiSource purchased to protect its subsidiaries' miles of nationwide pipeline, including

approximately 20,100 miles located in this state (including in this judicial district). Of all of NiSource's operating subsidiaries, the most mileage of pipeline is owned by its Ohio subsidiary.[1]

6. CMA is a corporation organized under the laws of Delaware with a principal place of business in Massachusetts. CMA is insured under the Policy.

7. FM Global is a corporation organized under the laws of Rhode Island with a principal place of business in Rhode Island, and is licensed to do and doing business in this judicial district. FM Global delivered the Policy to the insured in this judicial district.

## Jurisdiction and Venue

8. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds, exclusive of interest and costs, seventy-five thousand dollars ($75,000), and there is complete diversity of citizenship between plaintiff and FM Global.

9. Venue in this district is proper under 28 U.S.C. § 1391(b)(2), as plaintiff negotiated, paid for and received FM Global's insurance policy at issue in this matter in Columbus, Ohio, in this judicial district. While NiSource operating subsidiaries' pipelines span across seven states, Ohio has, and had at the time of contracting the Policy, more miles of insured pipeline than any other state. There is a single limit of liability in the Policy applicable to pipelines owned by NiSource's subsidiaries. The Proof of Loss for the costs to repair the damaged Low-Pressure Pipeline System was prepared in Columbus, Ohio and submitted to FM Global from Columbus, Ohio, in this judicial district. In addition, key witnesses, documents and other items regarding the damage to the Low-Pressure Pipeline System, the decision on how to

---

[1] *See* "Company Information," NiSource (2019), https://www.nisource.com/investors/company-information (listing the approximate number of miles of pipes owned by NiSource's subsidiaries by state – Ohio with 20,100 miles, Indiana with 17,600 miles, Pennsylvania with 7,600 miles, Virginia with 5,300 miles, Kentucky with 2,600 miles, Massachusetts with 5,000 miles, and Maryland with 650 miles.

repair the damaged Low-Pressure Pipeline System, and the associated costs, all are located in Columbus, Ohio, in this judicial district.

### The Damage to the Low-Pressure Pipeline System

10. On the afternoon of September 13, 2018, high-pressure natural gas was accidentally released into the Low-Pressure Pipeline System (the "Over-Pressurization Event"). Gas pressure in the Low-Pressure Pipeline System exceeded the level for which the pipeline distribution system was designed, thereby damaging the Low-Pressure Pipeline System. The Over-Pressurization Event resulted in numerous fires and explosions occurring across three municipalities served by CMA (the city of Lawrence and the towns of Andover and North Andover), resulting in one fatality, numerous injuries, and damage to more than 100 homes and businesses. Many residents of each municipality were evacuated, and a state of emergency was declared.

11. The Low-Pressure Pipeline System was built and designed to handle low-pressure natural gas. The vast majority of the 67.8 miles of main lines consisted of cast iron pipes connected by joints. Many of these joints were "bell and spigot" joints, with material (often jute or lead) jammed into the joint to seal the connections. In addition, joints connect the main line with each service line. A portion of the system consisted of polyethylene ("PE") pipes, which are designed and built to handle much higher pressures than the cast iron pipes. Prior to the Over-Pressurization Event, the Low-Pressure Pipeline System was fully operational and safely delivered natural gas to the residents and businesses of Lawrence, Andover, and North Andover.

12. As a result of the release of high pressure natural gas into the Low-Pressure Pipeline System on September 13, 2018, the Low-Pressure Pipeline System was damaged. The National Transportation Safety Board (the "NTSB") investigated the Over-Pressurization Event.

During the NTSB Board Meeting on September 24, 2019, NTSB Investigator Roger Evans stated that the pressure was "probably over 50 pounds or so" through the Low-Pressure Pipeline System during the Over-Pressurization Event.  When gas pipes and joints are exposed to over pressurization, the pipes and joints are damaged and can result in catastrophic failure if operated again without being immediately repaired.

13. After the Over-Pressurization Event, plaintiff's engineering team began to analyze options for repairing the damaged Low-Pressure Pipeline System.  Plaintiff determined, in consultation with regulatory authorities including the Department of Public Utilities ("DPU"), that due to the damage caused by the Over-Pressurization Event, the Low-Pressure Pipeline System could no longer serve its primary function and could no longer safely and reliably deliver natural gas to the customers.  It was determined that the most efficient method to repair the Low-Pressure Pipeline System was a combination of replacement of existing pipe with PE pipe and requalification of some existing PE pipe.

14. During the two months following the Over-Pressurization Event, plaintiff repaired most of the Low-Pressure Pipeline System.  Certain repairs to the paving that needed to be excavated to reach the damaged pipeline remain to be made, although plaintiff has already provided funds to the municipalities to perform the repairs.

## The Policy

15. On June 1, 2018, FM Global issued Policy No. 1040100 for the term of June 1, 2018 to June 1, 2019.  The premium was paid and the Policy was negotiated and delivered in Columbus, Ohio.  The Policy was fully in effect, with its full limit of liability for damage to pipelines intact, at the time of the Over-Pressurization Event.

16. The Policy covers property against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE" and specifically covers "pipelines" of the insured.

17. The Policy provides that it "will be governed by the laws of the United States of America" and that any disputes arising under the Policy "will be exclusively subject to United States of America jurisdiction."

18. The Policy provides that the limit of liability in an occurrence will not exceed $2,000,000,000, subject to limits of liability stated elsewhere in the Policy. The limit of liability for "Pipelines" is $300,000,000. The amount subject to the Proof of Loss is within the Policy's applicable limit of liability for damage to the insured's pipelines.

19. The Policy provides the following coverage under "Other Additional Coverages" applicable to pipelines, in pertinent part:

> R. PIPELINES
> This Policy covers insured physical loss or damage to property of the type insured consisting of pipelines, their gas contents, valves and supporting structures, as listed below:
> Natural gas distribution pipelines owned by NiSource Inc.
> Property covered under this Additional Coverage is excluded from coverage elsewhere in the Policy.

20. The Policy also covers the actual costs incurred in preparing a claim under the Policy.

21. The Policy provides that FM Global will pay the cost to repair damaged property.

22. The Policy requires FM Global to pay the "amount of loss for which the Company may be liable . . . within 30 days after: A. proof of loss as described in this Policy is received by the Company; and B. when a resolution of the amount of loss is made . . . by: 1) written agreement between the Insured and the Company." On July 10, 2019, plaintiff submitted the Proof of Loss for the damage suffered as a result of the Over-Pressurization Event. Defendant

FM Global has neither paid nor agreed to pay any amount or portion of the Proof of Loss and there has been no resolution of the Proof of Loss.

### FIRST CLAIM FOR RELIEF
*(Breach of Contract)*

23. Plaintiff incorporates paragraphs 1 through 22 in full by this reference.

24. FM Global issued the Policy under which FM Global insured the Low-Pressure Pipeline System against all risks of physical loss or damage.

25. Plaintiff paid the premiums in accordance with the Policy.

26. The Low-Pressure Pipeline System suffered physical loss or damage as a result of the Over-Pressurization Event.

27. Prior to the Over-Pressurization Event, the Low-Pressure Pipeline System was safely and reliably delivering natural gas to customers.

28. Because of the damage caused by the Over-Pressurization Event, the Low-Pressure Pipeline System was no longer able to safely and reliably deliver natural gas to the customers.

29. On July 10, 2019, plaintiff, pursuant to the Policy, timely presented FM Global with a Proof of Loss for $256,330,464, net of a $1,000,000 deductible, for costs paid to repair the damaged Low-Pressure Pipeline System insured by FM Global.

30. FM Global has failed and refused to pay any amount of the Proof of Loss.

31. There is no justification for FM Global's failure to pay the Proof of Loss.  All costs on the Proof of Loss are documented reasonable costs paid to repair the Low-Pressure Pipeline System damaged by the Over-Pressurization Event.

32. As a direct and proximate result of FM Global's continuing breaches of contract, plaintiff has been damaged in an amount subject to proof at trial.

## SECOND CLAIM FOR RELIEF
### *(Declaratory Judgment)*

33. Plaintiff incorporates paragraphs 1 through 32 in full by this reference.

34. FM Global insured the Low-Pressure Pipeline System against all risks of physical loss or damage.

35. The Low-Pressure Pipeline System suffered physical loss or damage as a result of the Over-Pressurization Event.

36. Prior to the Over-Pressurization Event, the Low-Pressure Pipeline System was safely and reliably delivering natural gas to customers.

37. Because of the damage caused by the Over-Pressurization Event, the Low-Pressure Pipeline System was no longer able to safely and reliably deliver natural gas to customers.

38. Plaintiff continues to pay and incur costs in connection with the repair of the Low-Pressure Pipeline System insured by FM Global.

39. FM Global disputes that the costs related to the repair of the Low-Pressure Pipeline System are covered by the Policy.

40. A judicial declaration is necessary and appropriate at this time so that plaintiff may ascertain its rights under the Policy, and obtain the complete recovery of loss that FM Global owes for the repair of the Low-Pressure Pipeline System. Such a declaration would obviate seriatim litigation and a multiplicity of actions that would otherwise result from the actual and justiciable controversy between plaintiff and FM Global concerning FM Global's obligations under the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. On the First Claim for Relief: An award of damages subject to proof at trial.

2. On the Second Claim for Relief: A judicial declaration that FM Global is required to pay the loss provided in the Proof of Loss as well as all future, supplemental or consequential loss incurred in connection with the repair of Low-Pressure Pipeline System as a result of the Over-Pressurization Event.

3. On all Claims for Relief: An award of reasonable costs, expenses, pre-judgment interest, and such further relief as is just and equitable in this case.

Dated: January 31, 2020

Respectfully submitted,

s/ Matthew R. Rechner
Matthew R. Rechner (0074446)(Trial Counsel)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Tel:     216.348.5400
Fax:    216.348.5474
mrechner@mcdonaldhopkins.com
acsmith@mcdonaldhopkins.com

Scott T. Schutte  (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
Tel:     312.324.1000
Fax:    312.324.1001
scott.schutte@morganlewis.com

Daniel E. Chefitz (*pro hac vice* forthcoming)
Teri J. Diaz (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:     202.739.3000
Fax:    202.739.3001
daniel.chefitz@morganlewis.com
teri.diaz@morganlewis.com

*Attorneys for Plaintiffs*

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all triable issues.

Dated: January 31, 2020

Respectfully submitted,

s/ Matthew R. Rechner
Matthew R. Rechner (0074446)(Trial Counsel)
Adam C. Smith (0087720)
MCDONALD HOPKINS LLC
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Tel:   216.348.5400
Fax:   216.348.5474
mrechner@mcdonaldhopkins.com
acsmith@mcdonaldhopkins.com

Scott T. Schutte  (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
Tel:   312.324.1000
Fax:   312.324.1001
scott.schutte@morganlewis.com

Daniel E. Chefitz (*pro hac vice* forthcoming)
Teri J. Diaz (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel:   202.739.3000
Fax:   202.739.3001
daniel.chefitz@morganlewis.com
teri.diaz@morganlewis.com

*Attorneys for Plaintiffs*